# CHARLESTON

Moss, Admrx., v. Campbell's Creek Railroad Co.

Submitted September 3, 1914. Decided October 6, 1914.

1. Carriers—*Injury to Passenger—Special Police Officers—Liability of Carrier.*

   A special police officer appointed by the Governor at the instance of a railway company, though prima facie a public officer, is, when specially employed by the company to enforce its rules and to protect the passengers on its trains, in that regard a servant of the company, and if while on a train as such servant he inflicts injury on a passenger, not acting in his capacity as a public officer for the vindication of the law, or not justified by the law of self defense, the company is liable, notwithstanding the injurious act is prompted by motives purely personal to the servant. (p. 63).

2. New Trial—*Order Granting—Limitations to Particular Question.*

   As a general rule a new trial when granted is awarded for the entire case; but when manifest justice demands, and it is clear that the course can be pursued without confusion, inconvenience, or

prejudice to the rights of any party, a new trial may be limited to a particular, separable question. (p. 65).

3.  APPEAL AND ERROR—*Reversal—Order Granting New Trial—Limitation of Particular Question.*

Where there is no error as to the trial on the merits of the action, but there is technical error in the overruling of a demurrer to the declaration, in that the appointment and qualification of the plaintiff as administratrix is not averred, which point was not expressly raised or deemed of consequence in the court below, a new trial will be limited to the issue made on the omitted averment when supplied. (p. 65).

Error to Circuit Court, Kanawha County.

Action by Lula Moss, administratrix, etc., against the Campbells Creek Railroad Company. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Adam B. Littlepage* and *Brown, Jackson & Knight,* for plaintiff in error.

*E. S. Bock* and *A. M. Belcher,* for defendant in error.

ROBINSON, JUDGE:

By this action the plaintiff administratrix seeks damages for the death of her intestate, who, it is alleged, while a passenger on a train of the defendant railway company, was wrongfully killed by a servant of the company. Through the verdict of a jury, plaintiff has recovered a judgment against defendant for $5000.00, and the latter prosecutes error.

Plaintiff's intestate was shot by a special police officer appointed at the instance of the defendant company pursuant to Code 1913, ch. 145, sec. 31. Defendant insists that it is not liable for the act. Prima facie such special officer is a public officer and the railway company is not responsible for his acts. But such officer, when specially employed by a common carrier to perform certain duties and services for it, is a servant of the carrier, while acting in the scope of his employment, for whose wrongful acts the carrier is liable. It is liable for such servant's infliction of injury upon a passenger, on a train whereon it is his employment to afford protection to passengers, although the injurious act was wilful

and malicious and was prompted by motives personal to the servant. *Layne* v. *Railway Co.*, 66 W. Va. 607.

It conclusively appears from the evidence that at the time Nichols, the special officer, killed Moss, plaintiff's intestate, the former was not acting as a public officer for the vindication of the law. He was not engaged in making an arrest or in doing any other thing in the line of an officer of the law. It furthermore conclusively appears that he was acting as the servant of the defendant carrier. There is no other proof in this particular but that he was on the train as the servant of the railway company to enforce its rules and protect the passengers. This is his own testimony as to his duties on the train. Whether Moss was a passenger, and whether the killing was justified under the law of self defense, were issues in the case. The verdict involves the finding that he was a passenger, and that Nichols did not kill him in self defense. Then the railway company is liable for the action of Nichols in causin the death, though the killing grew out of a purely personal matter between the two men, as defendant insists it did. Nichols being on the train in the line of his employment for the protection of the passengers, the carrier is liable for his act in breach of the protection he was employed to afford. His act was one within the scope of his employment in the broader sense in which the law recognizes scope of employment in such instances. 4 Elliott on Railroads, sec. 1638; 2 Hutchinson on Carriers, sec. 1093.

The trial court instructed the jury in accordance with the principles we have iterated above. It did not err in refusing the instructions asked which were inconsistent therewith. One of the instructions given for plaintiff as to the liability of the carrier for the act of Nichols did not embrace the question whether Nichols was acting as a public officer or as a servant of the carrier, but the conclusive state of the evidence in this regard, as well as the fact that the question was embraced in another instruction, made it not essential to do so.

A review of the instructions as to the question whether Moss was a passenger at the time he was killed discloses no error of the court in its action on them. What Moss' intention was as to payment of fare was properly submitted.

There is no error in the record, except in the overruling of defendant's demurrer to the declaration. That pleading is sufficient in all particulars but one. It does not aver the appointment and qualification of the plaintiff as administratrix. Because of the omission to plead this issuable matter, the demurrer should have been sustained. *Austin* v. *Calloway*, 73 W. Va. 231, 80 S. E. 361; *Perry* v. *New River, etc., Coal Co.*, 74 W. Va. 122, 81 S. E. 844.

At the time this action was instituted, as well as at the time the demurrer was entered, considered, and overruled, it was generally deemed unnecessary to aver that a plaintiff administrator had been duly appointed and qualified. Our decision in *Austin* v. *Calloway* came later and brought the neglected point to the attention of the profession. That point was never expressly raised herein until the case reached the appellate court—until the decision in *Austin* v. *Calloway* raised it. True, the demurrer to the declaration embraced the point and technically raised it, but in the proceedings below it was quite naturally never deemed of consequence and was not brought to the attention of the court. Just as full and fair a trial on the merits of the action was had on the declaration without the averment as would have been had with it. Defendant was entitled to the averment, because it is a traversable one; but if it had been in the declaration, in all probability it never would have been traversed. Moreover, were we wholly to reverse for want of the averment and to send the case back for the averment to be put in and a new trial to be had, in all probability the averment would not be traversed, or if it were, the due appointment and qualification of the administratrix would promptly be proved by production of the county records. If there had been any doubt as to the appointment and qualification of the plaintiff as administratrix, would not defendant have raised the issue, even on the declaration as it was? The omission in the declaration clearly had no bearing on the trial of the merits of the alleged wrong. By all the omitted matter was rather conceded to be unnecessary when the case was tried. If we wholly reverse, it will likely avail nothing but to put plaintiff to the costs, delay, and inconvenience of another trial and give defendant another

chance on simply that which has been already fairly determined.

Now, for such error alone, shall we order another trial as a whole? To do so, under the circumstances of this case, would seem manifest injustice. Many a similar action has gone through this court and the judgment has been sustained here with the same averment lacking. Simply because we have recently discovered its materialty, and in a sense have taken litigants by surprise, shall we begin to overthrow trials for the omission of the averment, when there is a sensible way to supply it and to try separately any issue raised on it? Without a retrial of the merits already tried with no error, there is a way to determine safely whether the verdict that has been found should fall and the suit abate. The one fact to be determined to support the verdict is separable from the merits already tried. If plaintiff duly alleges that she has been appointed and qualified and no issue is taken on that, or if taken is determined in her favor, why in reason and justice, under the peculiar circumstances in relation to the point and its omission, should there not be judgment on the verdict? If the averment had been duly made at the proper stage and the plea of *ne unques* filed thereto, the issue so made would have been tried by the record separately from the issues on the merits of the action, in advance of the same. Why not, since under the circumstances justice seems to require it, try last as well as first this separable issue as to whether plaintiff has been appointed and qualified? There is a demand for straight, speedy, and sensible justice. Here is an opportunity for it, and that without harmful violation of established legal order. Pity it is, that we have no statute which would enable us to disregard wholly such a matter as is relied on for reversal herein.

What the court said in *Woodward* v. *Horst,* 10 Iowa, 120, is pertinent here: "It may be admitted, that as a general rule a new trial when granted is awarded for the entire case, and that ordinarily, courts will not dispose of a cause by piecemeal. And yet when not attended with too much confusion or inconvenience, or where it can be done without prejudice to the rights of the parties, there is no substantial or valid objection to departing from the general rule. In this case

there need be no confusion, and certainly there is no preju-
dice.''

This doctrine is by no means new. It is generally accepted
where it safely and certainly meets the ends of justice. In
the case before us the omitted point has no bearing on the
ascertainment of that which has already been ascertained,
whether a servant of defendant in the course of his employ-
ment wrongfully killed plaintiff's intestate. How has de-
fendant been prejudiced if it is a fact that plaintiff has been
duly appointed and qualified? Why in meeting proper ends
of justice should not the verdict on the merits stand if the
fact is yet averred and not denied, or if denied is established
in favor of plaintiff? Say it is out of the usual course. Does
it prejudice the interests of any one? Ought not the usual
course to be departed from when to follow it will only give
to the party demanding that it be followed the benefit of a
mere unsubstantial technicality to the likely injury of the
other party? If, as is most probable, plaintiff has been duly
appointed and qualified, it would be inequitable to plaintiff
for us to declare the trial abortive, under the peculiar cir-
cumstances which, at so late an hour, have caused advantage
to be taken of the point. It is bad enough that in obedience
to existing principles we must even reverse the judgment,
without our going so far as to overthrow all that has been
done.

In a recent work it is stated: ''Probably from a desire to
eliminate unnecessary litigation, and in the exercise of the
discretion with which the appellate court is invested with
respect to the granting of new trials, it is undoubtedly the
present general rule, in remanding a cause for a new trial,
either by the court or a jury, when error exists only as to one
or more issues and the judgment in other respects is free
from error, to limit the new trial to the issues affected by the
error.'' 2 R. C. L. 287.

The same subject is adverted to in 14 Enc. Pl. & Pr. 937,
in this language: ''Where the material issues were cor-
rectly found upon the first trial, and the error does not touch
the merits, a partial new trial to correct that error may be
granted.''

Nor is the doctrine unknown in Virginia jurisprudence. The Supreme Court of Virginia has held: "New trials being addressed to the discretion and authority of the court, it may impose such terms upon the successful party as will meet the ends of substantial justice. The new trial may be limited to a single point, to a single issue, or a particular question, or even to a part of the demand sued for without re-opening the whole case." *Fry* v. *Stowers,* 98 Va. 417. Mr. Minor well understood it: "The application for a new trial being addressed to the equitable discretion and authority of the court, in order to prevent a material and manifest injustice, the court, as the alternative of a new trial, may impose terms upon the party, requiring him to consent to such modification of the verdict as will meet the substantial justice of the case (*e. g.* to reduce the recovery, etc.) ; the new trial to be granted, if he does not consent. So the new trial may be limited to a single point, as to a single issue in the case, or a particular question, without re-opening the whole case." 4 Minor's Inst., (3rd ed.), 930.

A concrete application of the doctrine, as applied to omitted averment of similar substance as that omitted in the case before us, is found in *Grand Trunk Ry. Co.* v. *Reddick,* 160 Fed. 898, wherein it is held: "Where a cause has been properly tried on the merits in a Circuit Court and a judgment rendered for plaintiff, on a reversal because of the failure of the declaration to allege the requisite diversity of citizenship between the parties to give the court jurisdiction, it is competent for the appellate court to remand with leave to permit an amendment, and to try the question of jurisdiction alone, if issue is taken thereon according to the practice with respect to pleas in abatement." In the course of the opinion the United States Circuit Court of Appeals said: "If plaintiff had averred that he was a citizen of Illinois and defendant a corporation organized and existing under the laws of Michigan, and if defendant could honestly have challenged those allegations or either of them, the issue could have been determined in advance of a trial on the merits. We see no just reason why, after a trial on the merits, the logically separable matter of jurisdiction should not be determined."

In *A. T. & S. F. Ry. Co.* v. *Gilliland,* 193 Fed. 608, we again observe the application of the principle, in relation to the omission of an averment of the plaintiff's right to sue because of diversity of citizenship, the court saying: "We are therefore of the opinion that the court below should be directed that the plaintiff be allowed to amend her complaint in accordance with the facts, and that the defendant be given an opportunity to meet the new issue thus raised, and have it determined according to law. If upon such determination it be found that there is diverse citizenship between the parties, a judgment will be re-entered upon the verdict accordingly."

The decisions along the same line are numerous. In 7 A. & E. Ann. Cas. 116, they will be found collected in a case note to *Smith* v. *Whittlesey,* 79 Conn. 189. In that reported case, the Connecticut court says the principle should be applied when its application is necessary to do justice.

We deem it well, however, to impress that which another court has tersely stated: "It should clearly appear that the matter involved is entirely distinct and separable from the matters involved in the other issues, and that the new trial can be had without danger of complications with other matters." *Benton* v. *Collins,* 125 N. C. 83.

In the light of the foregoing we are of opinion to reverse the judgment and remand the case with the following directions: Let the averment be supplied; if defendant takes issue thereon, let that issue be tried; if no issue is taken, or if taken is found in favor of plaintiff, let judgment be again entered on the verdict; if the averment is not supplied, or if supplied and issue taken on it, is found for defendant, let the verdict be set aside and the action be dismissed.

It may be said that in *Austin* v. *Calloway* and in *Perry* v. *New River, etc., Coal Co.* we did not pursue this course. In the first mentioned of these cases, it should have been pursued, but was not brought to our attention. In the last mentioned case, the verdict had already been set aside by the court below, and a new trial awarded. There were reasons warranting us in affirming that order.

*Reversed and Remanded.*