# CHARLESTON.

## OWEN v. APPALACHIAN POWER CO.

### Submitted March 9, 1916.   Decided June 3, 1916.

1. INFANTS—*Actions—Appointment of Next Friend—Necessity.*

   It is not necessary that a next friend should be appointed by a court, except in a proceeding before a justice, in order that he may prosecute a suit for, and in the name of an infant.   (p. 599).

2. VENUE—*Transitory Action—Personal Injuries.*

   An action for personal injury is transitory and follows a plaintiff wherever he goes.   Such action may be brought wherever jurisdiction of defendant may be obtained.   (p. 600).

3. CORPORATION—*Action Against Foreign Corporation—Acceptance of Service—Binding Effect.*

   A foreign corporation having its principal office in another state, but doing business in this state, may be sued here, and service of process against it, accepted by the state auditor, is binding.   (p. 601).

4. NEGLIGENCE—*Declaration—Requisites.*

   In an action for negligence the declaration need not aver the particular act of negligence; it is sufficient if it avers the manner and means of plaintiff's injury, and that it was caused by defendant's negligence.   (p. 601).

5. NEW TRIAL—*Verdict—Grounds for Setting Aside—Evidence.*

   A verdict, supported by oral testimony which is wholly inconsistent with natural laws and physical facts, admitted to be true or established by uncontroverted evidence, showing such testimony to be false, should be set aside as being contrary to the weight of evidence.   (p. 602).

6. ELECTRICITY—*Maintenance and Operation of Wires—Care Required.*

   An electrical power company is required to exercise a high degree of care in the construction, maintenance and operation of its wires, charged with a dangerous electric current.   But such high degree of care is only reasonable and is to be determined by the usage and custom prevailing among electric power companies.   (p. 605).

7. SAME—*Negligence—Evidence—Personal Injuries.*

   The unexplained breaking of an insulator which causes a highly charged electric wire to sag from the arm of the pole supporting it to a distance of six or seven feet from the ground, at a place remote from any public highway, and its remaining in that con-

dition for a period of twenty-four hours, do not prove negligence, in the face of direct, positive and undisputed testimony that reasonable care was observed in the construction, maintenance and operation of the line. In such case, the presumption of negligence arising from the mere falling of the wire is overcome by direct proof of diligence. (p. 605).

8. NEGLIGENCE — *Personal Injuries — Right of Action — What Law Governs.*

In an action brought in this state to recover for personal injury received in another state, the right of recovery depends on the laws of such other state. (p. 606).

9. APPEAL AND ERROR—*Personal Injuries—Proof.*

Injury, without proof of negligence, gives no right of recovery; and, where it is shown by the overwhelming weight of evidence that the injury resulted from plaintiff's negligence, or was an inevitable accident, a verdict for plaintiff can not stand. (p. 607).

10. TRIAL—*Direction of Verdict—Evidence.*

If the evidence is such that a verdict for plaintiff, if one should be so found, should be set aside, the court may direct a verdict for the defendant. (p. 610).

(MILLER, JUDGE, dissenting).

Error to Circuit Court, Mercer County.

Action by Reuben Owen against the Appalachian Power Company. Judgment for plaintiff, and defendant brings error.

*Reversed, and remanded.*

*Robert E. Scott,* and *Price, Smith, Spilman & Clay,* for plaintiff in error.

*J. R. Dillard* and *Sanders, Crockett & Kee,* for defendant in error.

WILLIAMS, PRESIDENT:

Defendant is prosecuting this writ of error to a judgment of the circuit court of Mercer county against it for $15,000, recovered by Reuben T. Owen in an action for personal injury, alleged to have been caused by defendant's negligence.

The Appalachian Power Company is a Virginia corporation engaged in the manufacture and sale of electrical power. The

current is generated by means of water power on New River in the state of Virginia and is transmitted from the power plant to transformer houses where the current is increased, regulated and controlled, and thence carried by means of transmission wires to its customers. It maintains three or four principal lines. One line runs west to Saltville, and two others run to Switchback, one of them by the way of Linkous Ferry. This line is spoken of in the record as line ''D-B''. All three lines run from the same transformer house. Line ''B'' runs also to Bluefield in West Virginia. Lines ''A'' and ''B'' parallel each other for some distance, and are attached to the same set of poles. They extend across a farm in Bland county, Virginia, occupied by S. J. Lambert. Line ''B'' carries a current of 88,000 voltage, and is the one by which plaintiff was injured. At the time of his injury plaintiff was sixteen years and seven months old, and was employed by Mr. Lambert to do various kinds of work on the farm and on a sawmill being operated thereon. On Sunday, the 10th of August, 1913, he was told by one of Mr. Lambert's sons to take a horse to a certain pasture field and turn him out. He did so, but did not return to the house by the same way he went. After he had turned the horse in the field, he says he picked and ate some blackberries and then started home by another route, not a traveled road, which brought him underneath the highly charged electric wires. When he came within seventy or seventy-five feet of the line, he saw that one of them was loose from the pole and sagged down within six or seven feet of the ground; and, thinking, as he says, he was in no danger unless he touched the wire, he attempted to pass under it and was horribly burned and maimed. His left hand and forearm were burned to a crisp, and the upper part of his arm was so severely burned that it had to be amputated at the shoulder. The toes on both feet were so badly burned that some of them had to be amputated, and the ligaments removed from parts of his feet. There were other burns about his body not so severe as these. A number of little holes were burned through his hat, his head was blistered in three or four places, and there were also blisters burned on other parts of his body.

Being an infant, plaintiff sued by his next friend, George L. Dillard. Suit was brought in Mercer county, West Virginia, and process against defendant was accepted by J. S. Darst, Auditor, and was also served personally upon Herbert Markle, defendant's general manager and agent residing in Mercer county. The officer's return states that defendant had no president, secretary, cashier, treasurer, trustee, director, or other chief officer in said county.

Defendant filed three special pleas, alleging, in one, that plaintiff is an infant and that George L. Dillard was not his next friend and had no right to bring or maintain the action; in another, that defendant is a corporation, chartered under the laws of Virginia and has its principal office in the city of Richmond, in that state where its principal officer, upon whom service may be had, resides; that the cause of action, if any, arose in the state of Virginia; and that plaintiff was, at the time he instituted his suit, and still is, a resident of that state, and was never, at any time, a citizen or resident of the state of West Virginia; and the third plea alleges the insufficiency of the writ and return, presenting, in different form, the same question presented by the second plea. On motion of plaintiff all these pleas were stricken out, on the ground that they constituted no defense. Three days previous to that order, the court made an order ratifying and approving the selection of said Dillard as plaintiff's next friend, and authorizing him to continue the prosecution of the suit. To all of the foregoing rulings defendant excepted.

Because of his infancy, it is contended plaintiff had no right to appear in court, either in person or by attorney, and that he can not do so by next friend, unless and until such next friend is appointed by the proper authority, and that a person suing in a representative capacity must allege and prove his right to bring the action, which was not done in this case. The following recent decisions of this court are cited in support of the last mentioned proposition, viz.: *Austin* v. *Galloway,* 73 W. Va. 231, 80 S. E. 361; *Moss, Admx.* v. *Campbell Creek Coal Co.,* 75 W. Va. 62, 83 S. E. 721; and *Crockett, Admr.* v. *Keystone Coal & Coke Co.,* 75 W. Va. 467, 84 S. E. 948. The rule announced in those cases does not apply here.

Plaintiff himself, although an infant, is prosecuting his suit in his own name, and, notwithstanding he is required to do so by *prochein ami,* he is still the real party in interest and the one who is entitled to the right of action, and the proceedings are conducted in his name. True, a personal representative is technically entitled to the right of action and sues in his own name, but in a representative capacity. The right which he seeks to enforce is not personally his, and hence he is required to allege and, if denied, to prove his authority to represent the decedent. But an infant, who comes into court by next friend, comes in his individual right, and, in the absence of allegation or showing of the next friend's unfitness, it will be presumed that he is a suitable person. Certainly so, if the infant, as in this case, is over fourteen years of age. At that age the statute permits an infant to select his own guardian, a much more important office than *prochein ami.* It has never been the practice of the courts of this country, so far as we know, to appoint a next friend for infants, and such is certainly not the rule in this state. Counsel for defendant rely upon *Blair* v. *Henderson,* 49 W. Va. 282. But the decision in that case rests on a statute which applies only to proceedings in a justice's court. The court no doubt has the power, should it be satisfied that a next friend is an improper person, to remove him and substitute another person in his stead. But Dillard's fitness is not questioned; the plea does not aver that he is not a fit person, or not able to pay any judgment that might be rendered against him for costs.

The action is for a personal injury and, therefore, transitory, following plaintiff wherever he goes. It is not confined to the place of accident, but may be brought in any court of general jurisdiction, provided jurisdiction can be obtained over the defendant. *Humphreys* v. *Newport News & M. V. Co.,* 33 W. Va. 135, approved and followed in later cases. *Quesenberry* v. *People's Loan & Savings Ass'n.,* 44 W. Va. 512; and *Empire Coal & Coke Co.* v. *Hull Coal & Coke Co.,* 51 W. Va. 474. See also, *Eingartner* v. *Illinois Steel Co.,* 94 Wis. 7, 59 Am. St. Rep. 859, a well considered case on the subject of jurisdiction of transitory actions.

Defendant is a corporation and, therefore, an impersonal being, still the statute provides how process may be served upon it, so as to enable the court to pronounce a binding judgment against it. Sec. 1, Ch. 123, Code 1913, relating to jurisdiction of causes of action, provides as follows: ''Any action at law or suit in equity, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:

\* \* \* \* \* \* \* \* \* \* \* \*

''Second, If a corporation be a defendant wherein its principal office is, or wherein its mayor, president, or other chief officer resides; or if its principal office be not in this State, and its mayor, president, or other chief officer do not reside therein, wherein it does business.''

Sec. 24aI, Ch. 54, serial section 2918, Code 1913, constitutes the state auditor attorney in fact for every foreign corporation doing business in this state, and authorizes him to accept service of process for it. This act is held to be constitutional. *State* v. *Petroleum Co.,* 58 W. Va. 108. Defendant is a foreign, non-resident corporation doing business in this state, and, having jurisdiction of the cause of action, the court acquired jurisdiction over defendant by the auditor's acceptance of service of process, which was binding on it. It is not necessary to decide whether or not the court also acquired jurisdiction over defendant by the service of process upon its agent at Bluefield. Sec. 7, Ch. 124, serial section 4743, Code 1913, provides for such manner of service, but whether the later statute, above referred to, was designed to take its place, so far as it relates to service on a non-resident corporation doing business in this state, is a question which, for the purposes of this case, we need not decide. The pleas did not aver that defendant was not doing business in this state, and were consequently bad.

Overruling defendant's demurrer to the declaration is also assigned as error. It is claimed that the declaration does not sufficiently aver the act of negligence complained of. We do not think it is open to this objection. It avers that it was defendant's duty to maintain and operate its wires so as to prevent them from injuring persons lawfully on premises over

which the wires were strung, and that, in disregard of its
duty in this respect, it "carelessly, negligently and unlawful-
ly so maintained and operated its said electric line that one of
said electric wires, constituting said "B" line broke loose
from the cross piece at the top of the pole from which it was
suspended and was carelessly and negligently permitted to
fall and sag down, leaving said wires suspended between the
pole standing immediately in front and the one immediately
behind said pole, from which said wire had fallen, a distance
of........feet; And there being no support for said wire at the
center where it had broken loose, and the distance between
said poles to which it was suspended being so great, said
wire fell and sagged down at the point midway between said
poles to within........feet of the ground. And Plaintiff says
that said wire was carelessly and negligently permitted by
said defendant to hang in that position, heavily charged with
electricity, for a period of........days." It also alleges the
manner in which the plaintiff was injured. These averments
are sufficient to apprise defendant of the negligence complain-
ed of. True, it is not alleged that the negligence consisted
in imperfect construction of the line, or in its maintenance;
nor does it point out whether the negligence was an act of
omission or commission. But the particular act of negli-
gence may not have been known to plaintiff or ascertainable
by him; and he is not required to allege a fact which he does
not know and can not ascertain by reasonable diligence. If
the wire was not in fact properly fastened, that would be the
act of negligence. If it was constructed properly and after-
wards became detached by any cause whatsoever, and was
negligently permitted to sag so near to the ground as to be
dangerous and remain in that position, charged with a deadly
current of electricity, for an unreasonable length of time, that
would be the act of negligence. Negligence is sufficiently
charged; the specific act of negligence that caused the injury
need not be averred. *Braley, Admr.* v. *N. & W. Ry. Co.,* 66
W. Va. 462; *Jaeger* v. *City Ry. Co.,* 72 W. Va. 307; and *Ma-
haffey* v. *Lumber Co.,* 71 W. Va. 175.

Defendant moved the court to set aside the verdict on nu-
merous grounds, but chiefly because it was contrary to law

and the evidence. It also moved in arrest of judgment, and for judgment *non obstante,* all of which motions were overruled, and this action of the court is assigned as error. This brings us to a consideration of the case upon its merits.

Defendant contends first, that no negligence is proven, and, second, that plaintiff's injury was due solely to his own negligence. The evidence is full, clear and uncontroverted to establish the fact that the line had been erected only three or four months before the accident; that it was skillfully constructed of good material, the kind generally used by power companies; that defendant had inaugurated and maintained a system of inspecting its lines, equal to that employed by any other company engaged in like business; that a patrolman inspected the wires at least once a week in any event, and oftener if anything was discovered to be wrong; that the particular line in question was examined on two different days the week of the accident, the last time being on the Friday preceding the Sunday on which plaintiff was injured; that the wires were strung upon poles thirty-five feet from the ground; that wire "B", which carried 88,000 volts, was caused to drop and sag near to the ground on account of the breaking of a section of the insulator attached to the arm of the pole supporting it, and to which the wire fastened; that the bursting of the insulator could be accounted for in only one of two ways, either because of a latent defect in the insulator itself, which could not be detected, or because the line had been struck by lightning, which so increased the current as to cause the insulator to burst. Defendant maintains in its transformer house meters which measure the voltage carried by any particular wire, and also a device which registers, automatically, any unusual disturbance of the current on its system of wires, occurring at any particular hour of the day or night; but there appears to be no means of ascertaining that a wire is sagging, so long as the current is uninterrupted, except by personal inspection of the line. It is proven that, about six o'clock Saturday evening, August 9th, there was a severe disturbance of the lines, which was registered by the automatic device at the transformer house. By testing the wires at the transformer house, cutting off the current and

then letting it on gradually, and building it up to the usual amount, it was ascertained that the trouble was on line "E", leading to Saltville. That line was found to be down and out of service, but line "B" appeared to be in perfect working order, and it was continued in service. It is also proven that lightning had struck line "E", late Saturday evening and had burnt one of the poles. That occurred many miles from the point where plaintiff was injured, and on another line; but it is proven that the electricity would pass through the transformer house and affect all the wires leading therefrom. Mr. S. J. Lambert, a witness for plaintiff, testified that, about six o'clock on Saturday evening, August 9th, he heard a popping noise near where plaintiff was later injured, and that when he went after his cows that evening, he saw the line was sagging from one of the poles. He warned his family at the supper table that evening not to go near it, that it was dangerous, and there is evidence tending to prove that plaintiff was present and heard it, but he denies that he heard any such warning; and whether he did or not was a question for the jury to determine. Defendant's servants and agents received no notice that the wire was down until late Sunday night, after plaintiff was injured.

Plaintiff's counsel insist that the fact that the wire broke loose from the insulator and sagged near to the ground and was suffered to remain so, from six o'clock Saturday evening until the afternoon of the next day, 4:30 o'clock, when plaintiff was injured, is sufficient proof of negligence to support the verdict. In support of their contention they invoke the rule *res ipsa loquitur*. But that is only a rule of evidence resting on a presumption which may be rebutted by positive proof denying it. Perhaps no better statement of the rule is found than that made by Chief Justice Erle in *Scott* v. *London Dock Co.*, 3 Hurl. and Col. Excheq. Rep. 600. In that case plaintiff was injured, in a public place, while going from one door of a warehouse to another, by bags of sugar falling and striking him, which defendant's servants were lowering by means of a crane. Plaintiff proved that he was injured by the bags falling on him, and then rested. The trial court, being of the opinion that that fact alone did not establish neg-

ligence, directed a verdict for defendant. But on appeal the case was reversed. In a brief opinion by the Chief Justice, he says: "But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

In no case does the law demand more than reasonable care. But reasonable care is a varying, rather than a fixed quantity, and depends upon the character of the business and the degree of danger incident thereto, and the probability of injury to others from want of care. Hence a degree of care which would be reasonable in one case might constitute negligence in another. Companies maintaining and operating highly charged electric wires, in places where it may be reasonably expected that persons will be exposed to danger therefrom, must exercise a very high degree of care, because a high degree of care, in such case, is only reasonable. But the law does not exact as high degree of care in the maintenance of dangerous machinery or appliances in an unfrequented place, as it does in the maintenance of such things along or across public highways. The measure of reasonable care in any business is determined by what is usual and customary in that business. Speaking for the court, Judge Buchanan, in the opinion in *Bertha Zinc Co.* v. *Martin,* 93 Va., at page 807, says: "Juries must necessarily determine the responsibility of individual conduct, but they can not be allowed to set a standard which shall, in effect, dictate the customs or control the business of the community." See also, *Berns* v. *Coal Co.,* 27 W. Va. 285; and *Titus* v. *Railroad* Co., 136 Pa. St. 618. It can not be said, as matter of law, that reasonable diligence required defendant to inspect its line any oftener than the uncontradicted evidence proves it did inspect it; nor that the breaking of the insulator and the sagging of the wire, and allowing it to remain in that condition, in an out of the way place, for twenty-four hours, was conclusive proof of negligence.

Each insulator consists of four saucer shaped, porcelain

covered discs, connected by metal hooks or rods. The wire is attached to the bottom disc, and a weight is suspended to the wire to prevent the wind from swaying it. The discs were proven to be of approved pattern and made of the best material known. The evidence tends to prove that the bursting or breaking of one of the insulator discs caused the wire to drop and sag near the ground; and some of defendant's expert witnesses, skilled in electrical science and in the construction and operation of power plants, give it as their opinion that the disc was broken by the force of the lightning that struck the Saltville line on Saturday evening. This theory is also supported by Mr. Lambert, plaintiff's witness, who says he heard a popping noise about that time of day, about the place where he later saw the wire was down. At any rate, that theory is not inconsistent with any testimony in the case. Defendant's expert witnesses give as a reason for their opinion, that the insulator was broken in pieces, whereas, if it had been destroyed by the normal current the wire was carrying, it would have had holes burnt in it.

It is proven that, when the disturbance of the lines was indicated by the device at the transformer house, defendant was diligent in making tests to locate the trouble and repair its line, and thought it had discovered and repaired the only injury, that on the Saltville line. It tested line "B" and found it to be in good working order. It can not be said, as matter of law, that it was negligent in not sending patrolmen over all its lines immediately after the disturbance on Saturday evening. It had no cause to suspect that line "B" had dropped from any of the poles, for its sagging did not interrupt the current. All the foregoing facts, being undisputed, are certainly sufficient to rebut the presumption of negligence arising from the mere sagging of the wire.

Plaintiff's injury occurred in the state of Virginia, and his right to recover depends upon the law of that state. *Western Union Telegraph Co.* v. *Brown*, 234 U. S. 542, and numerous cases cited at pages 544 and 545. Hence the recent Virginia decisions, relating to actions for negligence, are binding authority on this court, though we are not aware of any distinction between the laws of the two states on that subject. No

higher degree of care is demanded in any business than is required of a common carrier for the protection of its passengers, yet the court of appeals of Virginia held in the comparatively recent case of *Roanoke Railway & Electric Co.* v. *Sterrett,* 108 Va. 533, which was an action by a passenger to recover for injury received in the falling of a bridge, that: "A street railway company is not liable for an injury inflicted on a passenger by reason of the collapse of one of its bridges where it appears that the bridge was made to order by a competent and reliable manufacturer, was frequently and properly inspected and that the collapse was the result of an imperfect weld in a cord which supported the bridge, and that the defect was one which the utmost scrutiny could not have detected. It is a case of unavoidable casualty which human care and foresight could not have provided against." The plaintiff's theory, in that case, was and his evidence tended to prove it, that a stringer had slipped causing the bridge to fall, but defendant proved by expert witnesses that it could not have happened in that way, because the bridge received no part of its support from the stringers, and if the stringers had slipped and fallen, they would not have caused the bridge to fall.

"Injury alone is not sufficient to support an action for damages arising from the alleged negligence of the defendant. There must be a concurrence of wrong and injury. If a person does an act which is not unlawful in itself he cannot be made liable in damages for the resulting injury unless he does the act at a time or in a manner, or under circumstances which will render him chargeable with a want of proper regard for the rights of others." *N. & W. Ry. Co.* v. *Gee,* 104 Va. 806. *Lane Brothers Co.* v. *Barnard's Admr.,* 111 Va. 680.

Defendant was engaged in a lawful business, and it has proven by uncontradicted testimony that it was exercising reasonable care, measured by the prevailing custom among electrical power companies. The evidence proves that plaintiff's injury was either due to his own negligence, or was the result of an inevitable accident. Defendant insists that plaintiff's negligence is shown by the great weight of the evidence. He had worked for a short time in a coal mine where electric

power lines were used, and he admits he knew electric wires were dangerous, but says he thought it was necessary to touch them to be hurt. He admits that he heard the popping noise when the wire dropped on Saturday evening, and knew the wire was sagging before he attempted to pass under it. It was in a woodland, an unfrequented place, eight hundred feet, or more, from the fence enclosing the pasture field. He admits that the foot path, to which he says he was going in order to return home, did not pass underneath the wire where it sagged, but near another pole. Neither he nor Mr. Lambert, who were the only witnesses for plaintiff as to the condition of the wire, undertake to state exactly how near it came to the ground, they both say six or seven feet. On Monday morning when the linemen went to repair it, the power was taken off, and the distance between it and the ground was measured. The lowest point of the weight suspended to the wire was six feet and six inches from the ground, and the length of the weight was eight and one-half inches. The wire was, therefore, seven feet two inches and a half from the ground at the lowest point. A number of defendant's witnesses made actual tests, and swore that the arcing distance of a current of 88,000 voltage was four and a half inches. Plaintiff says he did not go under the wire at the lowest point, but six or eight feet to the left of the weight. He is five feet four inches high, and it was demonstrated before the jury that he could reach but six feet ten inches, standing solidly on his feet, and by tip-toeing, seven feet. He swears positively he did not have his hand above his head when he passed under the wire. Hence, if he passed under the wire where he says he did, the top of his head would have been one foot and ten inches from it, in fact it was something more than that, if what he says is true, for the measurements were taken at the lowest point, and he says he did not go under there. It is a natural law, proven to be without exception, that the tendency of an electric current is to pass to the ground, and that in passing from the wire over a body on the ground it would arc, or jump, to that part of the body nearest to the wire; also, that the point where the current first strikes, as well as the point from which it passes into the ground will be burnt more

than any other part. Plaintiff's left hand and arm to the el-
bow were charred, and from the elbow to the shoulder was
worse injured than any other part of his body, except his toes,
some of which were so badly burned that they had to be ampu-
tated, while his face and head were not injured much. His
testimony is the only direct evidence as to where he passed
under the wire, and what position his hands were in when
he was injured, but it is wholly inconsistent with the foregoing
well established facts, some of which are admitted. The court
can not be expected to accept as true that, which in the very
nature of things, could not have happened. The established
facts entirely outweigh and overcome the effect of plaintiff's
testimony, and hence it is our duty to set aside the verdict.
*Booth* v. *Camden Interstate Ry. Co.,* 68 W. Va. 674; *Jaeger* v.
*Railway Co.,* 72 W. Va. 307; *State* v. *Clifford,* 59 W. Va. 1;
and *Devericks* v. *Fairgrounds Imp. Co.,* 73 W. Va. 174. "A
verdict contrary to the decided weight and preponderance
of the evidence will be set aside, notwithstanding the evi-
dence upon which it stands was such as to warrant the giving
of instructions based upon it." *Fuccy* v. *Coal & Coke Ry. Co.,*
75 W. Va. 134, 83 S. E. 301. *Anderson* v. *C. & O. Ry. Co.,*
93 Va. 650. In the case last cited plaintiff claimed to have
been injured by being kicked off a moving train by a brake-
man. He said he was standing on a little platform which
goes out from the bottom of the car near the drawhead, when
the brakeman kicked him off. The jury accepted his state-
ment as true and returned a verdict in his favor. It was
shown that the act attributed to the brakeman was a physical
impossibility, even when the train is at rest. The court in its
opinion says: "It was pressed upon us with great earnest-
ness that the case is, under the law, to be considered as upon a
demurrer to evidence; but that rule, while it may and often
does require us to accept as true that which is capable of proof,
though the preponderance of evidence be ever so great against
it, cannot compel us to accept as true what in the nature of
things could not have occurred in the manner and under the
circumstances narrated, and may be said, therefore, to be
incapable of proof." We quote, also, the following from the
opinion of that court, in *N. & W. R. Co.* v. *Crowe,* 110 Va.

798, 805: "Courts are not required to believe that which is contrary to human experience and the laws of nature, or which they judicially know to be incredible, and although a plaintiff in error occupies the position of a demurrant to the evidence, yet if the verdict of the jury is dependent for its support upon the testimony of a witness which is contradicted by the conceded facts in the case, it will be set aside and a new trial awarded. Testimony in conflict with conceded or undisputed facts cannot, in the nature of things, be true, and hence cannot form any basis for a conflict upon which to rest a verdict. A court is not bound to stultify itself by allowing a verdict to stand, although there may be evidence tending to support it, where the physical facts demonstrate such evidence to be untrue, and the verdict to be unjust and unsupported in law and in fact."

"In such case, when the fact testified to and the fact necessary to be proven in order to sustain the verdict of a jury could not in the nature of things be true, the authorities clearly hold that the verdict should be regarded as against the evidence, and be set aside."

Thirty-one instructions were asked for on behalf of defendant, fifteen of which were given and sixteen refused, and the refusal to give the sixteen is assigned as error. Very little space is given in brief of counsel to the discussion of instructions, and the particular points of error in respect to them are not pointed out. We do not think it necessary to discuss them seriatim in this opinion, inasmuch as we have already fully discussed the law of the case. It follows from what we have herein said, that defendant was entitled to have its peremtory instruction given to the jury. Where the evidence is not sufficient to support a verdict for the plaintiff, if one should be found in his favor, and the court would have to set it aside, it may instruct the jury to find for the defendant. Not being able to see that plaintiff can not produce better evidence on another trial, we will reverse the judgment, set aside the verdict and remand the case for a new trial.

ON RE-HEARING.

We have carefully reconsidered this case on re-hearing and we find no reason justifying any alteration in our former opinion. All the questions discussed in brief of the able counsel are fully considered in the original opinion which we here re-affirm.

*Reversed and remanded.*

MILLER, JUDGE, *(dissenting)*:

I have the greatest respect for the judgment of my associates, but I have been unable to bring myself to the point of concurring in the opinion to be handed down in this case, for two reasons, first, because I think the question whether defendant was negligent in allowing the wire doing the injury to remain out of repair for the time proven, was properly submitted to the jury. That the wire was out of repair and sagging down in close and dangerous proximity to the ground where plaintiff was injured is fully proven, presenting a prima facie case by the rule, res ipsa loquitur. And I do not think the evidence of the defendant to overcome this prima facie case is sufficient to authorize this court to reverse the judgment. In the second place I think the question of the plaintiff's contributory negligence was properly submitted to the jury. I concede, however, based on some expert or opinion evidence, that some of the physical facts tended to discredit the positive evidence of the plaintiff as to his conduct at the place of his injury with respect to the dangerous wire. But I do not think this evidence was sufficient to withdraw the question from the lawful triers of the facts, the jury.

And I observe as bearing on both propositions that the instrument at defendant's power house, some twenty four hours or more before the plaintiff was injured indicated physical disturbances on one or more of defendant's service lines, and that defendant thereby had warning of this fact, and actually made repairs on one of the lines, but though connected by telephone lines along its whole system with its representatives, it took no pains within the twenty four hours intervening to inspect the wire which injured the plaintiff, and it seems to me it was for the jury to say, from all the facts and circum-

stances surrounding the parties, whether defendant was guilty of negligence in failing to institute promptly proper inspections and tests. The principles which we have applied in other cases it seems to me required of defendant these precautions.

For these reasons I would affirm the judgment.