CHARLES KELLER *v.* NORFOLK & WESTERN RAILWAY COMPANY
*et al.*

(No. 7371)

Submitted February 16, 1933.   Decided June 6, 1933.

(Rehearing denied August 1, 1933)

*F. M. Rivinus, Goodykoontz & Slaven,* and *Crockett & Tucker,* for plaintiff in error.

*Strother, Sale, Curd & St. Clair,* and *J. Powell Royall,* for defendants in error.

HATCHER, JUDGE:  (This case was assigned originally to Judge Litz, but because of his continued illness was re-assigned on May 30th.)

The plaintiff, Charles Keller, recovered a verdict in the circuit court for personal injuries received when an automobile in which he was riding was struck at a public road crossing by a regular passenger train of the defendant railway company.  A writ of error was awarded the defendant.

The accident occurred on the morning of April 16, 1929. The plaintiff, who was then about thirteen years of age, was in a Ford roadster, driven by his brother Clay, then aged eighteen, with his brother Jess, then aged ten, and his father, H. C. Keller.  The father was killed and each of the three

boys was injured. The theory of plaintiff is that the roadster approached the crossing with due caution, became stalled on the crossing, and the trainmen with ample time to have seen and appreciated the plight of the roadster, failed to check the train and avoid the accident. The theory of the defendant is that without caution the roadster came on the crossing just as the train arrived there.

Suits for the injuries to the several occupants of the roadster were brought against defendant. See the reports of the *Lena Keller, Adm'rx. of H. C. Keller* v. *N. & W. Ry. Co.,* and of the first trial of Jess Keller against the same, both in 109 W. Va. 522, 156 S. E. 50, 51, and of the second trial of the *Jess Keller* suit in 167 S. E. 448. So far as we are advised, the action of Clay Keller has not been tried.

Clay is the only witness heretofore who testified as to the duration of time the roadster was on the crossing. In the *Lena Keller* case and upon the first trial of the *Jess Keller* case, Clay fixed the time at about "a minute and a half". He reduced the time to "a minute or a half minute" at the second trial of the *Jess Keller* case. In the present action Clay says the time was about "a minute or a minute and a half". Charles was a witness at each of the other trials, but was not asked then how long the roadster was on the crossing. On the present trial he fixes the time at "about a minute and a half". Four witnesses testified that the roadster was standing still at the moment of collision, the three Keller boys and Bertha Shelton, who resided close to the track, four hundred and seventy feet from the crossing. Mrs. Shelton's attention was attracted when the train was distant from the crossing only "as far as across the courtroom." The width of the courtroom is not shown. The train was running at the rate of thirty-five miles an hour, or forty-four feet a second. Her house was so far below the railroad grade that she could see merely the upper portion of the body of the roadster. Taking into consideration the distance, the acute angle, the restriction and the briefness of her view, her testimony that the roadster was standing still when struck is of little probative value. At the trial of the *Lena Keller* case and at the first trial of the *Jess Keller* case, Clay accounted for the roadster's being stationary when struck by saying that he inadvertently

allowed it to get off one side of the crossing and that its rear wheels stalled on the second rail of the track. He deliberately posed a roadster on the track at the place he said the collision occurred, and had its photograph made, prior to those trials. (The photograph is exhibited again in the present case.) We described the photograph in a former opinion as portraying a roadster "partly on and partly off the crossing; the right rear wheel was against the second rail, the left rear wheel was about one and one-half feet inside the first rail and three feet from the second rail, and the car was so askew that its back would have been struck by the train which struck the Keller roadster." At the second trial of the *Jess Keller* case, Clay first said that his rear wheels stalled on something —he did not know what—before they had crossed the first rail; but on cross-examination admitted having given his former testimony and that it was correct. At the present trial Clay testified without giving the sequence: "The right hand wheel hit the rail." He first said, "I don't remember just where it (the roadster) was" when it stalled, but when read to him, admitted his testimony upon the first two trials as to its location. Neither Charles nor Jess gave any explanation of why the roadster was stationary further than that "the engine stopped." The train was in clear view of the crossing for some nine hundred feet. Both Charles and Jess testified that they (and their deceased father) continued to look up the track (from whence came the train) all the time the roadster was on the crossing, but that they never saw or heard the train. (Such "self stultification" as that is disposed of by our ruling in *Lester* v. *Ry. Co.*, 111 W. Va. 605, 609, 163 S. E. 434.) Clay said he looked once, did not see the train, and then devoted his attention to starting the roadster.

The engineer and fireman of the train in question both testified that the Keller roadster came onto the crossing without stopping and just ahead of the train engine. The defendant established that (1) the roadster was squarely across the track, and (2) on the regularly traveled portion of the crossing when struck, and (3) would have rolled off the crossing voluntarily because of its slope, if unrestrained.

The first fact was established (a) by a deep indentation approximately in the center of the door of the Keller roadster

which corresponded exactly in dimensions to the knuckle of a steel coupling which was in the exact center of the pilot beam of the engine, and (b) by two iron steps, one on each side of the pilot beam, being bent in.

The second fact was established by the testimony of Alex Bowles who arrived on the scene shortly after the accident. He testified *without contradiction* that he found fresh dirt scraped up at the crossing on the outside of each rail; and that the scraping started "where the common run of cars would have crossed. * * * Right along about the usual base of where the wheels should have run, it started," and continued out along the ties on the outside of the rails toward where the roadster was thrown.

The third fact was established by uncontroverted tests with automobiles similar to the Keller roadster.

For greater detail of the circumstances herein, see our opinions in the former *Keller* cases.

Had the Keller roadster been stalled where Clay first deliberately located it (according to the photo of the posed roadster), the train coupling would have struck the back of the roadster, and only one step on the pilot beam would have been bent in. Had it been where his second attempt located it, the coupling would have struck near the front of the roadster, and again only one step would have been bent in. Had it been at either location, the fresh dirt scraped up on the crossing along the outside of each rail (starting "where the common run of cars would have crossed"), is unexplained. The roadster could not have been stalled at the place on the crossing where the physical facts demonstrate it was struck, because the tests proved that with the gas accelerator closed, the roadster would have drifted off the crossing even in low gear. It therefore seems beyond doubt that Clay's locations of the roadster are fictitious. "Testimony which is irreconcilable with * * * well established facts in a case must be rejected as incredible." Moore on Facts, sec. 148.

Accordingly we hold here as we did in the former *Keller* cases: "Verdicts based on oral evidence, controverted by established physical facts, as in these cases, cannot stand." See *Owen* v. *App. Power Co.*, 78 W. Va. 596, 609-10, 89 S. E. 262; *Waller* v. *Ry. Co.*, 108 W Va. 576, 152 S. E. 13; *N. &*

*W. Ry. Co.* v. *Strickler*, 118 Va. 153, 155, 86 S. E. 824; 46 C. J., p. 183, sec. 138. The judgment of the circuit court is reversed, the verdict set aside, and a new trial awarded the defendant.

*Reversed; verdict set aside; new trial awarded.*