STATE *ex rel.* S. P. CATRON

*v.*

EDGAR B. SIMS, AUDITOR, *etc.*

(No. 10221)

Submitted January 11, 1950. Decided January 31, 1950.

GIVEN, JUDGE, not participating.

LOVINS, PRESIDENT, dissenting.

KENNA, JUDGE, participated in this decision.

*John T. Keenan,* for petitioner.

*William C. Marland,* Attorney General, *W. Bryan Spillers,* Assistant Attorney General, for defendant.

RILEY, JUDGE:

This is an original proceeding in mandamus to compel Edgar B. Sims, Auditor of the State of West Virginia, to issue a warrant upon the state treasurer for the payment to relator, S. P. Catron, of twelve hundred fifty dollars, for which the Legislature at its Regular Session in 1949 had appropriated in its Budget Bill, enacted into law on March 12, 1949. This appropriation was included to satisfy relator's claim for damages for the alleged wrongful and negligent destruction by fire of relator's growing "Christmas" trees caused by a hostile fire started and maintained

along West Virginia-United States Route No. 60, for the purpose of burning trees and brush thereon.

The relator asserted his claim against the State Road Commission of West Virginia before the state court of claims in the amount of sixty-two thousand two hundred forty dollars, which relator contended was due him by way of compensation for the destruction by fire of approximately one hundred forty-one thousand evergreen "Christmas" trees. The court of claims by unanimous decision found that there was a moral obligation on the part of the State to pay relator the sum of twelve hundred fifty dollars. The Legislature of 1949 by enactment of Chapter 12, Acts of the Legislature, 1949, adopted as its own the findings of fact of the court of claims as to various claims, including that of relator, against the State and the agencies thereof, and declared it to be the moral obligation of the State to pay each of such claims in specified amounts. By specific legislative direction, contained in Section 2 of the Budget Bill (Chapter 9, Acts of the Legislature, 1949), the appropriation to pay the award to relator remains in effect until June 30, 1951. The State Road Commission of West Virginia, acting upon such legislative .fiat, executed and delivered to the respondent, Edgar B. Sims, state auditor, a requisition for the payment of relator's claim, but the auditor refused to issue his warrant therefor, assigning as grounds for his action that "* * * the State cannot insure the public against torts committed by its agents or employees in the absence of statute or constitutional provision. It is my contention that State funds can be expended only if the State receives some benefit—goods, services or land."

The record before the court of claims, and as set forth in the allegations of relator's petition in this proceeding shows that relator, during the years 1937 to 1945, inclusive, had purchased approximately one hundred forty-one thousand evergreen trees, and was engaged in cultivating them on the boundary of land of approximately seventy acres owned by Nelson and Williams, trustees, and leased by relator. This tract was contiguous to West Virginia-

United States Route No. 60. The record discloses that relator had a market for the growing trees, many of which were several years of age, and that he was wont to sell the trees on the land for sixty-five cents each.

On April 17, 1947, the State Road Commission of West Virginia, acting through its servants and employees, was engaged in clearing the right of way of state route No. 60, by removing from the area on each side thereof trees and brush which had accumulated thereon. In order to clear said right of way, the state road commission's servants and employees started and maintained fires for the purpose of destroying the trees and brush so collected. Relator charges, and the record discloses, that the state road commission permitted and caused a fire on the right of way in close proximity to relator's evergreen trees, and so managed and supervised the same that the fire was communicated to relator's trees quickly causing a conflagration, which burned nearly over the entire boundary of land, and consumed and destroyed all of relator's trees.

The court of claims found that "It is abundantly and very satisfactorily shown by the evidence that the fire which destroyed claimant's evergreen trees originated from the point on the road or highway where brush and other debris was burned by employees of the state road commission. The fire on the highway was within six feet of claimant's growing trees." After the fire had been started, the road supervisor placed two employees to watch it. One of these employees has since died, but the other testified in the case to the effect that he and his companion remained on the highway until everything placed on the fire had burned to ashes. However, an impartial witness, whose deposition on behalf of relator was taken at the United States Training Center, Great Lakes, Illinois, testified that he resided on the leased land at the time the evergreen trees were destroyed, and that when the fire was raging he saw burning embers of logs at the point where the fire was started on the right of way of the highway. On the basis of this testimony the state court of claims held that "No precaution whatever is

shown to have been taken by the state in order to prevent the fire on the road right of way from communicating to the premises of claimant."

The initial and cardinal principle which should guide us in the appraisement of this case is succinctly stated by this Court in point 3 of the syllabus in *Woodall* v. *Darst, Auditor,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83; Anno. Cas. 1914B, 1278: "The Legislature is without power to levy taxes or appropriate public revenues for purely private purposes; but it has power to make any appropriation to a private person in discharge of a moral obligation of the state, and an appropriation for such purpose is for a public, and not a private purpose." So whether the appropriation is for a public or private purpose depends upon the existence of a moral obligation of the State. Whether, notwithstanding the legislative declaration in the instant case, a moral obligation exists is a judicial question, *State ex rel. Adkins* v. *Sims, Auditor,* 130 W. Va. 645, pt. 2 syl., 46 S. E. 2d 81, which question has been set at rest by the principles enunciated by this Court in the recent cases of *State ex rel. Cashman* v. *Sims, Auditor,* 130 W. Va. 430, 43 S. E. 2d 805; and *State ex rel. Davis Trust Co.,* v. *Sims, Auditor,* 130 W. Va. 623, 46 S. E. 2d 90. In the *Cashman* case the general rule, subject to certain exceptions specified in the opinion, is stated to be that a moral obligation of the State in favor of a private person such as would ground a valid appropriation of public funds requires at least: (1) A prior statute creating or imposing upon the State an obligation to compensate a person for injury or damage resulting from the violation of a statute by the State or by any of the State's agencies; or (2) "An obligation or a duty, legal or equitable, not imposed by statute but created by contract or resulting from wrongful conduct, which would be judicially recognized as legal or equitable in cases between private persons."

There being no prior statute governing the instant case, and no contract between the relator and the State, or any of its agencies, the appropriation in relator's favor will

fail under the rule in the *Cashman* case, unless the fire which destroyed relator's trees was so negligently started and maintained in such dangerous proximity to relator's land as would ground an action for negligence had private parties been involved. As heretofore stated, the court of claims evidently believed the testimony of the disinterested witness, Richard L. Weaver, that at the time the fire was raging on relator's premises, he saw burning embers of logs at the point on the highway where the fire was started; and found that such conduct on the part of the road commissioner's employees would be actionable negligence had private parties been involved. The Legislature adopted *in toto* the findings of the court of claims that: (1) The state road commission's employees' failure to supervise and control the fire was such negligence as would ground an action at law had only private parties been involved; and (2) that the State was under a moral obligation to compensate the relator. These findings of the court of claims, adopted by the Legislature, were the basis for the instant appropriation. In *Woodall* v. *Darst, Auditor, supra,* a case involving a prior statute, it was held that: "A fact once determined by the Legislature, and made the basis of an act, is not thereafter open to judicial investigation." In *Lemon* v. *Rumsey,* 108 W. Va. 242, pt. 4 syl., 150 S. E. 725, it was held that: "A legislative declaration of fact, if not arbitrary, is final." In the majority opinion in the *Cashman* case at page 437, this Court said: "Within its legislative sphere, and subject only to constitutional limitations, the power of the Legislature is almost plenary and it may pass whatever legislation it may see fit to enact."

Although the factual findings of the Legislature in adopting the findings of the court of claims are entitled to great weight, the matters involved therein being in their nature primarily juristic, as defined in the *Cashman* case, the findings are subject to judicial review, and this Court must decide whether the facts portrayed by the instant record create a moral obligation against the State and in favor of relator.

Applying the test required in the *Cashman* case, does the factual situation portrayed by the instant record and embraced in the findings of the Legislature and the court of claims constitute such wrongful conduct on the part of the road commission's employees as would be recognized in a court of law involving private parties? We think it does. Were it not for the constitutional immunity which the State has against suit or action under Article VI, Section 35, of the Constitution, and the rule of positive law that the State is not liable for the negligence of its officers and agents when engaged in the performance of a governmental function, *State ex rel. Davis Trust Co.* v. *Sims, Auditor, supra,* the State would be liable in an action for damages to recover the value of relator's trees destroyed by the fire.

In *Mahaffey* v. *The J. L. Rumbarger Lumber Co.*, 61 W. Va. 571, pt. 1 syl., 56 S. E. 893, this Court held: "One setting fire upon his premises is charged with the duty of exercising ordinary care and skill in preventing it from spreading and being communicated to the property of another, and if he fails to exercise such care, and by reason thereof the fire is communicated to the property of another, causing him damage, he is liable for the damages sustained by reason thereof." See generally *Keyser Canning Co.* v. *Klots Throwing Co.*, 94 W. Va. 346, 118 S. E. 521, 31 A. L. R. 283, 22 Am. Jur., Fires, Sections 15, 16 and 18; *Cobb* v. *Twitchell*, 91 Fla. 539, 108 S. E. 186, 45 A. L. R. 865, and cases cited in annotation thereto, pages 870 to 882, inclusive.

The road commission employees having legitimately started a fire along a public road in dangerous proximity to relator's premises upon which there were highly inflammable evergreen trees, thereafter they were under the high duty to use reasonable care to control and supervise the fire so as to prevent damage to relator's property. The finding of the court of claims, adopted by the Legislature, to the effect that they did not use such care is amply sustained by the record in this case. In these circumstances the finding of the Legislature that the State

had a moral obligation to recompense relator for the destruction of his evergreen trees meets the requirement prescribed in the *Cashman* case.

We therefore are of opinion that the writ prayed for should be awarded, requiring the state auditor to issue a warrant in relator's favor in the amount of twelve hundred fifty dollars.

*Writ awarded.*

LOVINS, PRESIDENT, dissenting:

Being fully aware of the constitutional provisions contained in the organic law of this State, I feel it is my duty to dissent from the holding of the Court in permitting a recovery from the State on the sole basis that the State, through its agents and employees, has committed a wrong.

I apprehend there is no controversy over the effect of Section 35, Article VI and Section 6, Article X of the Constitution of this State, which, in my view, prevent recovery from the State for the tortious acts of its officials, agents, and employees. Moreover, it has been repeatedly held that the state road commission of this State cannot be made a defendant in an action to recover against it, even in instances where invasion of privately owned land is involved. See *Mahone v. Road Commission,* 99 W. Va. 397, 129 S. E. 320; *Stewart v. Commission,* 117 W. Va. 352, 185 S. E. 567; and *Watts v. Road Commission,* 117 W. Va. 398, 185 S. E. 570.

Nevertheless, a new principle has been injected into the jurisprudence of this State, which is referred to as a "moral obligation." By adherence to that principle, and giving it wide effect, this Court has opened the door to permit recovery from the State for all torts allegedly committed in the performance of governmental functions. I think that the principle of "moral obligation" should be restricted to instances where there is a prior statute, or where services are rendered and goods or money received, such as in the cases of *Woodall v. Darst,* 71 W. Va. 350, 77 S. E. 264; *Slack v. Jacobs,* 8 W. Va. 612; and *Glover v. Sims,* 121 W. Va. 407, 3 S. E. 2d 612.

The repair and maintenance of public roads is a high governmental function, and in this proceeding there is no denial that the tort complained of by relator resulted from the maintenance of Route No. 60, a public highway.

The Constitution of this State should not be circumvented by the doubtful application of a principle heretofore circumscribed and restricted. If the people of this State desire to pay damages arising from wrongs committed by their government in the performance of governmental functions, they should modify their organic law so that all claims against the State could be inquired into and adjudicated according to the course of the common law and a general statute applicable to all persons and property within its borders.

I admit that the trend in other jurisdictions is toward holding the sovereign liable for torts. But to my mind there are insuperable obstacles in this jurisdiction which prevent the enactment of such laws: the constitutional provisions above adverted to.

It approaches sophistry to say that the holding herein imposes no liability on the State. From whose funds will the allowance be paid; from what source will the money come to pay it? The answers are obvious.

It is unnecessary further to elaborate my reasons for dissenting, as most of the reasons for this dissent are stated in a dissenting opinion filed by me in the case of *Trust Co.* v. *Sims,* 130 W. Va. 623, 639, 46 S. E. 2d 90, 99. All of the reasons set forth therein, except those relating to scienter and the causal connection between the acts of the convict and the acts of the State officials, are equally applicable to this proceeding.

In my opinion, this Court, commencing with its decision in the case of *Cashman* v. *Sims,* 130 W. Va. 430, 43 S. E. 2d 805, has placed itself in an unenviable position which gives rise to a confused concept of law and a chaotic condition. Ultimately, this Court must resolve itself to adopt either the principles enunciated in this dissent, or, in the

alternative, accept as final any legislative finding of the existence of a moral obligation. At present this Court is merely astride a thorny fence, and the decision in this case exemplifies that it is now giving effect to a distinction without a difference as to the liability of the State.

For the foregoing reasons, I respectfully dissent, and would deny the writ.