STATE OF WEST VIRGINIA *ex rel.* W. B. JORDAN, *et al.*

*v.*

EDGAR B. SIMS, *Auditor*

(No. 10225)

Submitted January 11, 1950. Decided March 28, 1950.

Fox, JUDGE, and LOVINS, PRESIDENT, dissenting.

*D. Grove Moler*, for petitioners.

*William C. Marland*, Attorney General, *W. Bryan Spillers*, Assistant Attorney General, for defendant.

RILEY, JUDGE:

W. B. Jordan, Lena Jordan, Betty Lou Jordan, and W. B. Jordan, Jr., brought this original proceeding in

mandamus to compel Edgar B. Sims, Auditor of the State of West Virginia, to issue a warrant upon the state treasurer for the payment to the relator, W. B. Jordan, of one thousand dollars, and to each of the other relators two hundred fifty dollars, for which the Legislature, at its Regular Session in 1949, had appropriated in its budget bill, contained in Chapter 9, Acts of the Legislature, 1949, enacted into law on March 12, 1949, and effective from its passage. This appropriation was included in the budget bill to satisfy relators' claims for damages for the alleged wrongful and negligent failure of the State Road Commission of West Virginia to guard by proper barricades, signs and flares against the hazard created by the commission, through its employees, in the removal of the floor of a bridge for the purpose of reconstruction on what is commonly known as Bolt-Glen Daniel highway, a heavily used public highway leading from Glen Rogers, in Wyoming County, to Glen Daniel, in Raleigh County.

The relators asserted their claims against the State Road Commission of West Virginia before the state court of claims which relators contend were due to them by way of compensation for personal injuries resulting from their automobile having been driven over a public road and into the bed of a stream at the place where the bridge floor had been removed. The court of claims, by a divided vote of two to one, held that the state road commission was not guilty of negligence in the premises, the Honorable Charles J. Schuck, a member of the court, filing a dissenting opinion to the effect that the testimony before the court of claims predominated in favor of the relators' position that proper precautions had not been taken by the commission to warn and protect the travelling public as to the condition that existed at the place where relators were injured. The Legislature in Chapter 14, Acts of the Legislature, 1949, directed the auditor to pay out of the funds appropriated and available for the purpose to relator, W. B. Jordan, one thousand dollars, and to each of the other relators two hundred fifty dollars; and by said Act the Legislature found and declared that it was the moral obligation of the State to pay to

each of the relators said respective sums of money and "that said injuries were approximately caused by failure of state employees to adopt and enforce proper precaution signs to warn the traveling public upon said highway of the approaching of a road bridge which had been completely removed by a maintenance crew for the purpose of reconstruction thereof." The State Road Commission of West Virginia, acting upon such legislative fiat, delivered to the respondent, Edgar B. Sims, State Auditor, a requisition for the payment of relators' claims; but the auditor refused to issue his warrant therefor.

The record before the court of claims discloses that about three o'clock on the morning of September 2, 1945, claimants left their home in Kopperston, Wyoming County, in an automobile, owned and driven by claimant, W. B. Jordan, to visit relatives in the City of Pittsburgh, and proceeded over the Bolt-Glen Daniel highway from Glen Rogers, in Wyoming County, to Glen Daniel, in Raleigh County; that about four-fifteen o'clock, while it was still dark, the automobile plunged into the bed of a stream at the place where the state road commission had removed the floor of a bridge. Relators asserted before the court of claims that there were no barricades, flares or warning signs of any kind to warn the public generally of their hazard; that the Jordan automobile plunged from the highway through the opening created by the removal of the floor of the bridge into the stream of water below. The record discloses that each of the claimants was seriously injured, required hospitalization, and medical treatment; and that relator, W. B. Jordan, as a result of his injuries is suffering from traumatic arthritis of the spine. It also appears that the automobile owned and operated by him was completely demolished and became a total loss.

The record before the court of claims fully establishes that the construction crew working upon the reconstruction of the bridge, under the supervision of one M. M. Eller, bridge foreman, in charge of the construction, maintenance and reconstruction of bridges in Raleigh

County, where the bridge was located, left work at six-thirty on the Friday evening preceding the Sunday morning on which relators were injured. Eller was the last man to leave work. So far as the record discloses, no member of the crew, including Eller, visited the scene of the work at any time on Saturday, and it appears that Eller's first appearance was about nine o'clock on Sunday morning after claimants were injured. Several witnesses testified that, at the point where relators were injured, as late as nine o'clock on Saturday night, they were so disconcerted by the lack of warning precautions, that they stopped their cars and left them to make an examination of the road before proceeding; and that they found no warning lights burning at that time. There is uncontradicted evidence in this record to the effect that flares located on the road on each side of the stream were not burning and that they contained no fluid. In fact, an effort was made to relight one of the flares without success.

Eller testified for the state road commission that at the time he left work on Friday evening, there were substantial barricades at the ends of the road created by the removal of the floor of the bridge, upon each of which there was a reflector light, which would respond to the headlights of approaching cars, indicating a detour. One witness, travelling the road in the direction that the Jordans were going some time before the Jordans were injured, testified that the reflector was placed so high that it did not respond to the headlights of his car.

Eller further testified that it was his duty simply to place the flares and barricades on Friday evening when he and his crew left work; that he was not required to pay any further attention to them; and that after he and his crew left work on Friday evening, any duty as to the maintenance of the flares and barricades fell upon Jess Blake, a newly appointed road supervisor of Raleigh County, who was Eller's immediate superior. According to this witness on that Friday morning, Blake relieved him of this responsibility, saying that "He would have

someone else down in the lower end of the county attend to that, I needn't bother with it." Eller did not return to the bridge until the following Sunday morning, and, so far as this record shows, neither the new supervisor nor any one for him gave any attention to the flares from six-thirty on Friday evening until after the relators were injured early the following Sunday morning. Blake was not called as a witness either to deny Eller's testimony in this regard, or to state what supervision, if any, was made of the flares and barricades from the time the Eller crew quit work on Friday until after the relators' accident. In our opinion, there is ample evidence in this record to sustain the Legislature's finding of fact contained in Chapter 14 of the Acts of the Legislature, 1949, that relators' injuries and the damage to the Jordan car were caused by the failure of the State employees to adopt and enforce proper signals to warn members of the travelling public on the highway that they were approaching a road bridge which had been completely removed.

While the decision of the court of claims that the state road commission was not guilty of any negligence may, in the first instance, be persuasive with the Legislature, such decision cannot and does not override a legislative fiat, and a finding that a moral obligation of the State, in fact, exists. As the Court held in *State ex rel. Cashman* v. *Sims*, 130 W. Va. 430, 436, 43 S. E. 2d 805, 811: "The State Court of Claims is the creature of the Legislature of this State. It is not a judicial body. It is a special instrumentality of the Legislature. Its powers and its functions are not judicial but legislative in character. Section 4, Chapter 20, Acts of the Legislature, 1941, Regular Session. The Legislature may accept or reject its findings or approve or disapprove its recommendations." To like effect see *Adkins* v. *Sims*, 127 W. Va. 786, 790, 34 S. E. 2d 585. So we have a legislative finding that the State is under the moral obligation to pay the instant claims, and a further finding based upon substantial evidence, as disclosed by the instant record, that the state road commission employees were guilty of negligence, which would be actionable as against the State or the State Road Com-

mission of West Virginia if this case had been between private persons. This case comes fully within the holding of this Court in the *Cashman* case to the effect that a moral obligation of the State in favor of a private person as would ground a valid appropriation of public funds exists where there is "an obligation or a duty, legal or equitable, not imposed by statute, but created by contract or resulting from wrongful conduct, which would be judicially recognized as legal or equitable in cases between private persons." In our opinion, this case is fully governed by the recent case of *State ex rel. Catron* v. *Sims*, 133 W. Va. 610, 57 S. E. 2d 465, wherein it is stated: "Were it not for the constitutional immunity which the State has against suit or action under Article VI, Section 35, of the Constitution, and the rule of positive law that the State is not liable for the negligence of its officers and agents when engaged in the performance of a governmental function, *State ex rel. Davis Trust Co.* v. *Sims, Auditor, supra,* the State would be liable in an action for damages * * *." In the *Catron* case, as here, the employees of the state road commission were engaged in a governmental function. In that case the relator sustained damages by the negligent failure of the road commission's employees to control a hostile fire started on the right of way of West Virginia-United States Route No. 60, which destroyed relator's evergreen trees. In the instant case the State was engaged in a governmental function in repairing a bridge on a public road, and for the reason that this Court sustained the legislative finding that a moral obligation existed in the *Catron* case, we sustain the legislative finding to that effect in the instant case, contained in Chapter 14, Acts of the Legislature, 1949. For a more detailed exposition of the principles upon which this decision is based, see the opinion of this Court in *Price* v. *Sims, Auditor,* 134 W. Va. 173, decided contemporaneously with the decision in this case.

It follows that the writ of mandamus prayed for should be awarded.

*Writ awarded.*

Fox, JUDGE, dissenting:

For reasons stated at length in my dissent in the case of *State ex rel. Price* v. *Edgar B. Sims, Auditor,* decided on this day, 134 W. Va. 173, I dissent from the decision of the majority in this case.

I am authorized to state that Judge Lovins, for the same reasons, joins in this dissent.