STATE OF WEST VIRGINIA *Ex Rel.* CARL V. RIDGLEY

*v.*

EDGAR B. SIMS, *Auditor*

(No. 10844)

Submitted September 26, 1956. Decided November 13, 1956.

*J. J. N. Quinlan, Ramon A. Woodall,* for relator.

*John G. Fox,* Attorney General, *George G. Burnette, Jr.,* Assistant Attorney General, for respondent.

RILEY, JUDGE:

In this original proceeding in mandamus of State of West Virginia ex rel. Carl V. Ridgley against Edgar B. Sims, Auditor of the State of West Virginia, the relator seeks a writ of mandamus from this Court to compel the respondent auditor to issue a warrant in due form upon the State treasury for the payment of a legislative appropriation in favor of the relator.

The claim involved in this proceeding is against the West Virginia National Guard, and is for damage and personal injuries allegedly sustained by the relator as the result of a collision between his automobile and a vehicle operated by Corporal Carl L. Morton, Battery C, 468th Field Artillery Battalion, West Virginia National Guard. At the time of the collision the claimant Ridgley was seated in the driver's seat of his automobile, parked on Washington Avenue (sometimes called Fourth Avenue, and officially designated as such), a short distance west of Third Street West, in the city of Huntington, Cabell County, West Virginia. The claim is based on the allegedly negligent operation of the motor vehicle by Corporal Morton. The relator (hereinafter called the "claimant") is the holder and payee of a certain requisition transmitted on March 8, 1956, on Sheet No. 344, drawn on the funds of the State of West Virginia for the

issuance of a warrant on the State treasury in the amount of ten thousand and ninety-nine dollars, which requisition was regularly and officially delivered to the respondent auditor on March 8, 1956; and on the date of the delivery of such requisition to the respondent auditor, the auditor failed and refused, and still fails and refuses, to honor the requisition and to issue his warrant in payment thereof. The aforesaid amount of ten thousand and ninety-nine dollars is the amount which the claimant claims he is entitled to receive to compensate him for the loss of his right eye and alleged property damages.

The petition alleges that the Governor, as the Commander-in-Chief of the militia in its militia status, and the Adjutant General, a member of the Governor's staff in charge of the militia by virtue of Chapter 15, Article 5, of the Code of 1931, as amended and reenacted by Chapter 150, Acts of the Legislature, Regular Session, 1953, were in control of the mobile unit organized under Article 5, Chapter 162, Acts of the Legislature, Regular Session, 1951, as last amended and reenacted, which National Guard vehicle, being driven by Corporal Morton, was a unit or part thereof.

This claim was originally tried and decided in claimant's favor by the Court of Claims before that court was abolished by statute and the duties thereof vested in the Attorney General's office. The Court of Claims found in favor of the claimant in the full amount of his claim, and found that the claim was based upon a moral obligation of the State to pay the claim.

In the Court of Claims the parties by J. J. N. Quinlan, Esq., the claimant's attorney, and Arden J. Curry, Assistant Attorney General, entered into the following stipulation:

"In the matter of Carl V. 'Duke' Ridgley, Claimant vs. The Adjutant General's Department of the State of West Virginia, Respondent.

"The claim arises out of an automobile accident occurring on June 30, 1952, at approxim-

ately 3:30 P.M. Claimant Ridgley was parked on Washington Avenue, sometimes called Fourth Avenue and officially designated as such, just West of Third Street West, in Huntington, Cabell County, West Virginia. Fourth Avenue is a black top avenue extending in a easterly-westerly direction, and intersects Third Street West. Third Street West extends in a northerly and southerly direction. Fourth Avenue is approximately fifty-six feet wide, and Third Street West is approximately twenty-eight feet wide. The intersection of these two streets is controlled by a stop and go, electric traffic light. Ridgley, headed east, was the third car west of Third Street West, and waiting a change in the traffic light. The National Guard was moving a number of trucks north on Third Street West into the intersection of Fourth Avenue, and turned west onto Fourth Avenue and were proceeding in a westerly direction. The truck driven by Private James Morton of the National Guard approached the intersection of Third Street West, and Fourth Avenue, and made the left turn, but continued in a westerly direction and swerved southwest. At the point of collision between the truck of the National Guard and the passenger car, being occupied as a driver by Ridgley, there are three definite lanes on each side of the central traffic lines. Ridgley, headed in an easterly direction, was approximately three feet south of the center line and the forepart of his car some six or eight feet behind the second car, also headed east. Ridgley's car was struck by the National Guard truck at approximately its left front corner near the head light. The truck continued on, virtually tearing off the side of Ridgley's car, and continued on and crashed into the car behind Ridgley head on. Ridgley was struck personally on his left hip, and left shoulder. He was thrown violently against the steering column of his car and his right eye was badly injured. Ridgley was treated by Dr. H. D. Hatfield in the Huntington Memorial Hospital. X-rays were made of him and he remained in the hospital until the next day. Dr. A. C. Esposito then examined and treated Ridgley for injury to his right eye.

"It is further stipulated and agreed that, in addition to the foregoing, the testimony of Dr. Hatfield, if he were present, would be as follows regarding his diagnosis:

"Concussion of the brain, bruises over body, injury to right eye, X-ray negative for evidence of traumatic injury. Injured neck, left shoulder and hip and right eye."

The award of the Court of Claims in the amount of ten thousand and ninety-nine dollars was certified to the Legislature at its regular session, 1956, which adopted as its own the findings of fact of the Court of Claims, and declared the claimant's claim of ten thousand and ninety-nine dollars to be a moral obligation of the State of West Virginia, and directed the auditor to issue a warrant for its payment from available funds appropriated for that purpose. Notwithstanding this, the auditor refused to pay the claim from the appropriation made by the Legislature for that purpose; and on July 31, 1956, the relator instituted this original proceeding in mandamus in this Court. The respondent auditor filed an answer on September 4, 1956, and the issue presented by relator's petition and respondent auditor's answer was submitted to this Court upon the briefs filed by the respective parties, and upon oral arguments of counsel.

This case is controlled by the recent case of *Weekley* v. *Sims, Auditor*, 139 W. Va. 263, 79 S. E. 2d 847, as to all matters involved herein, except the question whether the claimant received the allegedly permanent injuries on the basis of which he has asserted his claim in the Court of Claims and is now asserting it in this Court. We say this because Weekley's automobile was being driven by him on the same side of the street on which claimant here was parked at the time of the collision, and was involved in the same collision which allegedly injured claimant. This Court held in the second syllabus in the case of *Weekley* v. *Edgar B. Sims, Auditor, supra,* that: "Where the uncontradicted facts show that an employee of a State agency, while operating a vehicle in the performance of his usual duties, turned a corner into the wrong traffic

lane and collided with the stopped vehicle of relator, damaging it, such action, in the absence of any explanation or defense, constitutes sufficient negligence on which to base a legislative finding that a moral obligation exists on the part of the State in favor of the relator, and a warrant drawn upon an appropriation made therefor does not contravene the provisions of Article X, Section 6 of the State Constitution."

Shortly after the accident claimant was taken to Memorial Hospital in Huntington, where he was visited three times by Dr. H. D. Hatfield, and later was examined, at the suggestion of Dr. Hatfield, by Dr. Charles M. Polan, who, Dr. Hatfield says, is a competent eye specialist. Dr. Hatfield testified that claimant's eye was bruised, and there was slight hemorrhaging from it, and he feared claimant would lose the sight of his right eye.

Claimant testified that he is a sports writer for one of the Huntington papers, which work requires the use of a typewriter; that prior to his injury he had slightly defective vision in both eyes, and in particular 20/40 in the right eye; and claimant testified that after the injury he lost the entire sight in his right eye, which has so greatly impaired his work, that proofreaders on the paper on which he works complain of the copy which he has prepared and sent to them.

A careful and detailed examination having been made by Dr. Polan and later by Dr. Albert S. Esposito, likewise an eye specialist, both of whom testified without contradiction that claimant had suffered a detached retina of the right eye, which would result in total blindness of that eye. Both specialists were rather indefinite as to whether a detached retina is always caused by a trauma, as the result, for instance, of myopia; and both testified that it "could" have resulted from a trauma but that it "could" have resulted from some cause other than a trauma.

In the decision of this case we are met with the finding of the Court of Claims that the State is under a moral

obligation to pay the amount of claimant's claim, and likewise there is available to the claimant in this proceeding the finding of the Legislature that a moral obligation exists.

This Court has held in the following cases that an appropriation by the Legislature, based upon a moral obligation, is not violative of Section 6, Article X, Constitution of West Virginia, which provides that the State of West Virginia shall not assume or become responsible for the debts or liabilities of any county, city, township, corporation or person, which cases are cited by Judge Browning in his opinion in the companion case of *Weekley* v. *Sims, Auditor, supra; State ex rel. Utterback* v. *Sims,* 136 W. Va. 822, 68 S. E. 2d 678; *Price* v. *Sims,* 134 W. Va. 173, 58 S. E. 2d 657; *Saunders* v. *Sims,* 134 W. Va. 163, 58 S. E. 2d 654; *State ex rel. Jordan* v. *Sims,* 134 W. Va. 167, 58 S. E. 2d 650; *State ex rel. Catron* v. *Sims,* 133 W. Va. 610, 57 S. E. 2d 465; and *State ex rel. Wallace Bumgarner* v. *Sims,* 139 W. Va. 92, 79 S. E. 2d 277, 286.

The rule set forth in points 1 and 2 of the syllabus of *Weekley* v. *Sims, Auditor, supra,* in our opinion, applies with equal force to a case where an allegedly negligent employee of a State agency, operating a motor vehicle in the performance of his usual duties, causes personal injuries to a petitioner or relator in a proceeding in mandamus to compel the State auditor to honor a requisition, where the claim asserted is based upon a moral obligation found upon sufficient grounds by the Court of Claims and the Legislature, and a proper legislative appropriation to pay the claim has been made.

In view of the holding of this Court in the *Weekley* case, and the other cases cited above, which are also cited in the opinion of this Court in the *Weekley* case, and taking into consideration that the claimant testified without contradiction that he had partial use of his right eye prior to the injuries and lost the entire use of the eye immediately after the accident, we are of opinion that a moral obligation exists, and that the respondent auditor should

honor the requisition now in his hands of the claimant, who is the relator in this proceeding.

For these reasons the writ as prayed for is awarded.

*Writ awarded.*

LOVINS, JUDGE, concurring:

I have heretofore pointed out cases in which I dissented in mandamus proceedings similar to the instant case. See the dissent written by me in the case of *State* v. *Weekley*, 139 W. Va. 263, 268, 79 S. E. 2d 847. I have listed the cases in which I have dissented or concurred in dissenting opinions written by Judge Fox. See *State ex rel. Davis Trust Company* v. *Sims*, 130 W. Va. 623, 46 S. E. 2d 90; *State ex rel. Catron* v. *Sims*, 133 W. Va. 610, 57 S. E. 2d 465; *State ex rel. Utterback* v. *Sims*, 136 W. Va. 822, 68 S. E. 2d 678; *State ex rel. Bumgarner* v. *Sims*, 139 W. Va. 92, 79 S. E. 2d 277; *Saunders* v. *Sims*, 134 W. Va. 163, 58 S. E. 2d 654; *State ex rel. Jordan* v. *Sims*, 134 W. Va. 167, 58 S. E. 2d 650; *Price* v. *Sims*, 134 W. Va. 173, 58 S. E. 2d 657.

I do not think it necessary to dissent further since I am bound by numerous cases heretofore decided by this Court. I therefore reluctantly concur in the result reached in this proceeding.