Alice SARGIS and Shual Sargis,
Plaintiffs,

v.

Carl Ervin BARNETT, Defendant.

No. 841–F.

United States District Court
N. D. West Virginia,
Fairmont Division.

Aug. 1, 1968.

J. Scott Tharp, Harry R. Cronin, Fairmont, W. Va., Albert S. Walker, Akron, Ohio, for plaintiffs.

Russell L. Furbee, Fairmont, W. Va., for defendant.

CHRISTIE, District Judge.

On November 18, 1964, Alice Sargis, one of the plaintiffs in this action, was injured when the car in which she was sitting was struck by a tractor-trailer truck driven by the defendant, Carl Ervin Barnett. At the time of the accident, the defendant was an employee of the State of West Virginia and was acting within the scope of his employment. Shual Sargis, the other plaintiff, was the owner of the car and the husband of Alice. They filed suit in this court alleging injuries and damages as a result of the negligence of the defendant in the operation of the truck. Jurisdiction is based upon allegations of diversity of citizenship and requisite amount in controversy. 28 U.S.C.A. § 1332.

On November 10, 1966, and before the issues in this case had been fully litigated, the plaintiffs filed notice in the West Virginia Court of Claims alleging substantially the same facts involved in this action and asking for an award of damages. Following a hearing in the Court of Claims, that court rendered a

decision favorable to the plaintiffs and made an award of $2,000.00 to Mrs. Sargis for her personal injuries and an award of $1,277.11 to Mr. Sargis for damages to his car and for the medical and hospital expenses of his wife.[1] These awards, totaling $3,277.11, were subsequently approved by the state legislature and payment thereof has since been tendered to and accepted by the plaintiffs. It now becomes our duty to determine the effect of the acceptance of these awards by the plaintiffs on their right to pursue their action in this court. In his motion to dismiss, the defendant contends that the satisfaction of the awards of the Court of Claims bars the plaintiffs from pursuing further their action on their claims in this court. Plaintiffs are of the view, however, that since the West Virginia Court of Claims is "not a judicial body" satisfaction of its awards should not be equated with the satisfaction of a judgment of a court in the traditional judicial sense. Inasmuch as jurisdiction is based upon the diversity of citizenship of the parties, it is to the law of the State of West Virginia that we must look to determine the issues raised by the motion to dismiss. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

It should be noted at the outset that extensive research has revealed only three cases in which the question now before this court has been litigated, and none of these cases arose within the State of West Virginia. Thus, in ruling on the motion to dismiss in accordance with the law of the State of West Virginia, we shall be required to apply rules of law which that state "would probably follow" rather than rules which it has applied in the past. Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Mutual Life Insurance Company, 319 F. 2d 469 (4th Cir. 1963).

■■ Under the rules generally applicable to litigation between private parties in courts of general jurisdiction, an injured party may proceed against tort-feasors (including those whose relationship is that of master and servant)[2], jointly or severally, and may recover more than one judgment for the common wrong. But if a judgment is recovered against one of them and that judgment is satisfied, such satisfaction will preclude the injured party from proceeding against the other defendants. State ex rel. Bumgarner v. Sims, 139 W.Va. 92, 79 S.E.2d 277 (1953); Makarenko v. Scott, 132 W.Va. 430, 55 S.E. 2d 88 (1949). The obvious rationale for this rule is to be found in the idea that an individual injured by the joint negligence of one or more persons is generally limited to recovery only of an amount of damages sufficient under law to compensate him for his loss. A judgment rendered by a court of competent jurisdiction establishes the monetary value of the "loss" and payment of this amount by one of the wrongdoers satisfies the objectives upon which the various legal remedies are based. Of course, if the primary object of the law was to punish wrongdoers rather than to compensate injured parties, satisfaction of a judgment against one joint tort-feasor might not preclude an injured party from pursuing other remedies against the several wrongdoers. However, under our system of jurisprudence an injured party, while entitled to full satisfaction, is entitled to but one satisfaction. Makarenko v. Scott, supra. Thus, in order to resolve the issues raised by defendant's motion to dismiss in the present case, we must decide whether an award rendered by the West Virginia Court of

---

1. See copy of findings and conclusions of the Court of Claims exhibited as an appendix to this opinion.

2. Under the view adopted by the majority of the jurisdictions in which the question has been raised, a plaintiff may bring separate actions against a master and his servant to recover for the negligence of the servant. Under this view the master and servant are considered joint tort-feasors in spite of the fact that the master's liability is derivative. 135 A.L.R. 271 (1941). State v. Sims, supra.

Claims "establishes the monetary value of the loss" and whether or not payment of this amount precludes the plaintiffs from pursuing their remedy against the defendant in this court.

In an action brought in Tennessee, Schoenly v. Nashville Speedways, Inc., 208 Tenn. 107, 344 S.W.2d 349 (1961), the plaintiff there sought to recover damages for personal injuries alleged to have been caused by the concurrent negligence of defendants and a State Highway Patrolman. Previous to the institution of the action plaintiff had been awarded compensation by the Tennessee Board of Claims in the sum of $5,-000.00, which sum had been paid. While recognizing that the Board of Claims was "'not necessarily a judicial body but * * * largely a legislative body' * * * vested with 'quasi-judicial functions,'" the Court, nevertheless, dismissed plaintiff's action against the remaining joint tort-feasors.[3] In dismissing the action the Court made the following remarks in justification of its treatment of the award of the Board:

"We think its determination and award upon such a claim is to be likened to a judgment and the payment of such award is not to be treated as a gratuity or as in the nature of a covenant not to sue but as a satisfaction of the judgment. The statute provides that 'no award or settlement shall be made unless facts found by said board of claims establish such a case of liability on the part of a department or agency of the State government *as would entitle the claimant to a judgment in an action at law,* if the State were amenable to such.' * * * So we must presume that the Board followed this statute and that the facts found made a case of such

liability and that the award made by the Board was fair and adequate compensation for plaintiff's injuries. We think that this constituted a satisfaction and discharge of the claim or tort sued on and that plaintiff cannot maintain this suit for further compensation."

When faced with a question similar to the one involved in the *Schoenly* case, the Court of Appeals of the State of Georgia, in Trice v. Wilson, 113 Ga.App. 715, 149 S.E.2d 530 (1966), held that an award of the Claims Advisory Board of that state did not bar the bringing of an action against the state's employee for damages.[4] In distinguishing this case from the facts involved in the *Schoenly* decision, the Georgia Court pointed out that, unlike Tennessee, the legislature of the State of Georgia had created no statutory guidelines to give parties before its Claims Advisory Board fair and adequate compensation for their injuries, its "award of compensation * * * (being) absolutely discretionary, ex parte in its determination, and based upon the State's moral obligation to answer for the torts of its employees and not upon any legal duty."[5]

In determining whether this Court should adopt the reasoning of the Tennessee Court or that of the Court of Appeals of the State of Georgia, we must first look to the statute creating the West Virginia Court of Claims to determine its functions, powers and limitations. The Court of Claims of West Virginia was created to provide "a simple and expeditious method for the consideration of claims against the State"[6] which, because of its sovereign immunity, "cannot be determined in the regular courts of the State." Under this statute, in the event a settlement cannot be

---

3. See also Bundt v. Embro, 48 Misc.2d 802, 265 N.Y.S.2d 872 (Supreme Court, N.Y. 1965); Dardeen v. Greyhound Corporation, 412 S.W.2d 585 (Ky.1967); Bach v. Bach, 288 S.W.2d 52 (Ky.1956).

4. See also Pickwick v. McCauliff, 193 Mass. 70, 78 N.E. 730 (1906).

5. The guidelines furnished the Tennessee Board of Claims consisted of the statutory directive that it should not render an award unless the claim established such a case of liability "as would entitle the claimant to a judgment in an action at law * * *."

6. W.Va.Code, Ch. 14, Art. 2.

reached between the state agency involved and the claimant, the Court is directed, if it finds that the claim is "prima facie within its jurisdiction," to conduct a hearing so as to "disclose all material facts and issues of liability," and it may call witnesses or require evidence not produced by the parties. The Attorney General is directed to represent the interests of the State in all claims before the Court and the claimant may appear in his own behalf or by counsel. If the Court finds that a claimant is entitled to relief it is required to file its decision with the Clerk of the Court of Claims together with a brief statement of its reasons for so finding. The Court is also required, when making an award, to determine and itemize the amount to be paid, with the reasons therefor, in its statement filed with the Clerk. The awards so rendered by the Court are subject to approval by the state legislature, which in its discretion may either accept or reject them.

In analyzing the various factors considered important by both the Tennessee and Georgia Courts, it is apparent, first, that unlike the procedure followed by the Georgia Claims Advisory Board, proceedings before the West Virginia Court of Claims are contested rather than *ex parte* in nature and, secondly, as was the case in the creation of the Tennessee Board of Claims, the West Virginia Legislature has established a quasi-judicial body for the determination of claims against the state, providing procedures and guidelines to insure that fair hearings are accorded and adequate compensation is paid to injured parties. Thus, in providing that the Court should consider claims which, but for the state's constitutional immunity, "could be maintained in the regular courts of the State" the legislature has clearly implied that the Court is to decide the claims before it on the basis of the general principles of law and equity applied by the "regular courts of the State," finding in favor of the claimant only where the facts "establish such a case of liability * * * as would entitle the claimant to

a judgment in an action at law, if the state were amendable to such." It might be argued that since the legislature is not bound by the decision of the Court of Claims, satisfaction of an award should not be equated with satisfaction of a judgment of a court of law, but such an argument is unpersuasive in the present case inasmuch as the legislature has already approved, without modification, the award issued by the Court and payment thereof has been made to and accepted by the plaintiffs. Of course, if the legislature had modified or refused to honor the award a different case would be presented, but we are not now presented with such a circumstance and the question of the effect of such modification or refusal is not now before this Court.

Plaintiffs, however, point to a West Virginia statute, 55-7-12, which states,

"A release to, or an accord and satisfaction with, one or more joint trespassers, or tortfeasors, shall not inure to the benefit of another such trespasser, or tortfeasor, and shall be no bar to an action or suit against such other joint trespasser, or tortfeasor, for the same cause of action to which the release or accord and satisfaction relates."

As was recognized by the West Virginia Court in a 1928 decision, Chewning v. Tomlinson, 105 W.Va. 76, 141 S.E. 532 (1928), literally interpreted this statute would seem to imply that complete reparation by one of several tort-feasors would not prevent the injured party from collecting further damages from the others. However, the Court refused to construe the statute in such a manner as to bring about this result, choosing instead to interpret the statute as having "no reference to the effect the payment of a judgment by one trespasser will have on a separate judgment against a joint trespasser for the same injury." Having thus disposed of this statute, the Court went on to hold that the collection in full of a judgment against one joint trespasser operates as

"a satisfaction of a separate judgment against another such trespasser for the same injury * * *." See also Hardin v. New York Central Railroad Company, 145 W.Va. 676, 116 S.E.2d 697 (1960); State v. Sims, supra, 79 S.E.2d at p. 290.

■ Thus, by parity of reasoning, since the State of West Virginia, but for its immunity from suit, would have been jointly and severally liable with the defendant in this action under the doctrine of *respondeat superior* and since the plaintiffs voluntarily elected to and did submit their claims to the State Court of Claims and that Court has made awards to them thereon, which have been satisfied in full by the state legislature and accepted by the plaintiffs, the plaintiffs are now precluded thereby from proceeding further in this court in this action against the other joint tort-feasor. Accordingly, defendant's motion to dismiss on the basis of the prior satisfaction of plaintiffs' claim must be granted.

## APPENDIX

### ALICE SARGIS and SHUAL SARGIS
vs.
### ADJUTANT GENERAL
(No. B–374)

J. Scott Tharp, for claimants.
Thomas P. O'Brien,
    Assistant Attorney General, for respondent.

JONES, District Judge:

These claims were filed before the Attorney General of West Virginia on November 10, 1966, for personal injuries sustained by the claimant Alice Sargis, property damage to the automobile of the claimant Shual Sargis, and for medical expenses and other damages arising out of a collision between the Sargis automobile and a tractor-trailer driven by Carl Ervin Barnett, a member of the National Guard under the jurisdiction and employment of the Adjutant General of West Virginia. Evidence on behalf of the claimants and the respondent was heard by the Court on October 31, 1967.

The evidence shows that on November 18, 1964, Alice Sargis, 49 years of age, a resident of Ohio, attended a funeral in Lewis County, West Virginia and thereafter parked her husband's car, a 1957 Plymouth, on the north side of 2nd Street, in the City of Weston, near the intersection of the west line of Water Street. Second Street is approximately 25 feet wide and Water Street is approximately 16 feet wide. The Barnett operated tractor-trailer, 38 feet long, was traveling east on Second Street and turned north on Water Street. In making the turn in the limited space afforded by the narrow streets, the tractor-trailer swung across the intersection and the rear portion of the trailer struck the left rear portion of the Sargis vehicle, and claimant Alice Sargis was violently thrown about, striking her head and chest.

Claimant Alice Sargis returned by bus to her home in Akron, Ohio, on Friday, November 20, 1964, and on the following Monday, five days after the accident, she consulted Dr. Lauren M. Brown, a general practitioner, who treated her with physiotherapy, a cervical collar and traction. She suffered considerable pain and was unable to perform her usual household work for a long period of time. Treatments continued to the date of the hearing. This claimant also was examined by an orthopedic physician, Dr. H. W. O'Dell. As late as July 22, 1967, Dr. O'Dell re-examined this claimant and stated his opinion that she will have a mild permanent disability of approximately 10 to 15 per cent.

Although Barnett says that he did not see the claimants' automobile, we find no positive evidence to contradict the claimants' showing that the Sargis automobile was legally parked in a parking meter space. The record shows that the respondent's driver was negligent and no evidence was adduced to show contributory negligence. In our opinion, these are valid claims against the Adjutant General of West Virginia, which in equi-

ty and good conscience should be paid. The claimant Shual Sargis has claimed the sum of $1,707.11 for damages to his automobile and for doctor, hospital and medical expenses. The sum of $40.00 for x-rays reimbursed the claimant by insurance and $390.00 claimed for transportation expenses are disallowed as not proved; and it is our judgment that the claimant Shual Sargis should recover for the other items of his claim, and he is hereby awarded the sum of $1,277.11.

It is our judgment that the claimant Alice Sargis also should recover, and she is hereby awarded the sum of $2,000.00.